UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

G3 GENUINE GUIDE GEAR INC.,

    Plaintiff,

v.

MARKER DEUTSCHLAND GMBH, et al.,

    Defendants.

C15-561 TSZ

ORDER

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 35, and plaintiff's cross-motion for partial summary judgment, docket no. 49. In this litigation, plaintiff G3 Genuine Guide Gear Inc. alleges that defendants Marker Deutschland GmbH and Marker Volkl USA, Inc. are infringing U.S. Patent No. 8,746,728 B2 ("the '728 Patent"). Plaintiff is the assignee of the '728 Patent, which discloses a heel unit for an alpine ski binding. The parties have entered into a stipulation pursuant to which defendants conceded that the accused devices literally infringe independent Claim 1 of the '728 Patent, and plaintiff agreed to limit its infringement contentions for trial to only dependent Claims 35 and 37 of the '728 Patent.

ORDER - 1

*See* Stip. (docket no. 32).[1] In their motion for summary judgment, defendants asserted *inter alia* that Claims 1 and 37 of the '728 Patent are invalid because they were anticipated by French Patent No. 2,613,949, which was issued to Raymond Durfort and Roger Brard (the "Durfort/Brard Patent"). In its cross-motion, plaintiff sought a ruling as a matter of law that such anticipation defense lacks merit as to Claim 1 of the '728 Patent. Plaintiff did not make a similar argument with regard to Claim 37 of the '728 Patent, but the Court is satisfied that the issue has been fully briefed with regard to both Claim 1 and Claim 37. Having concluded, as a matter of law, that Claims 1 and 37 are not anticipated by the Durfort/Brard Patent, the Court entered a Minute Order on May 9, 2017, docket no. 64, denying defendants' motion and granting plaintiff's cross-motion for summary judgment. This Order explains the Court's reasoning.

**Background**

Defendants manufacture and/or sell the "Marker Kingpin" brand of alpine ski bindings, which usually include both a toe and a heel unit. The toe unit is not at issue in this matter. Alpine skiing or touring involves both downhill and uphill travel on skis. When an individual is skiing downhill, both the toes and the heels of his or her alpine ski boots are connected to the skis. In contrast, when an individual is ascending or "touring," only the toes of his or her boots remain pivotally engaged with the skis; the heels are able to move up and down with respect to the skis. The invention disclosed in the '728 Patent

---

[1] In the stipulation filed on January 4, 2017, defendants reserved the right to appeal the Court's Order entered August 25, 2016, docket no. 28, discussing the disputed claim terms and declining to construe them in the manner defendants had proposed.

ORDER - 2

is an apparatus that can transition between (i) holding a ski boot heel onto an alpine ski for downhill travel, and (ii) releasing the heel for touring use of the ski.

For safety reasons, alpine touring bindings are designed to release the ski boots in the event that the user falls while skiing downhill. In addition, when a ski boot detaches from a ski while the heel binding is in the downhill mode, brake arms that are attached to the ski will automatically deploy into the snow. Automatic deployment of these brake arms, however, is neither necessary nor desired when the skis are being used in ascent or touring mode. The '728 Patent discloses an apparatus that can transition between (i) locking the brake arms in a raised position (away from the snow) during the touring mode, and (ii) allowing automatic deployment of the brake arms in the event of a fall while traveling downhill.

Claim 1 of the '728 Patent concerns a device for "selectively holding" the heel of an article of footwear, typically a ski boot (2), to a snow travel aid, usually a ski (1). *See* '728 Patent at Col. 15, Lines 47-48, Ex. A to Am. Compl. (docket no. 15-1); *see also id.* at Col. 2, Lines 57-58. Claims 35 and 37 are dependent on Claim 29, which is similar to Claim 1, but discloses a "binding kit" comprising "toe holding and heel holding units for holding footwear to a snow travel aid." *Id.* at Col. 18, Lines 63-64. The heel unit (20) disclosed in Claim 1 has five primary components: (i) a base (27) mountable to a ski; (ii) an "upper portion" (26) that is "slidably engageable with the base" for "controllable movement" by the user into a downhill or a touring position; (iii) a "connector" with pins (28) for connecting the apparatus to the heel (3) of a ski boot; (iv) a brake; and (v) a "brake holder." *See id.* at Col. 15, Lines 49-67; *see also id.* at Cols. 8–9. The heel unit

disclosed in Claim 29 does not include either the brake or the brake holder limitations of Claim 1, but dependent Claim 37 does contain such requirements.



*Id.* at Fig. 4A. The downhill and touring positions are defined as follows: (i) in the downhill position (B), "the connector would be connected to the heel," and (ii) in the touring position (A), which is "spaced rearwardly from the downhill position," the connector "would be disconnected from the heel." *Id.* at Col. 15 at 55-59. Claim 1 also requires that "single motions of a lever in opposite directions result in complete movement in opposite directions between the downhill and touring positions." *Id.* at Col. 15, Line 67 – Col. 16, Line 2.

The brake described in Claims 1 and 37 is "moveable between a braking position whereby the brake is positioned to contact snow and a raised position whereby the brake would be positioned above the snow." *Id.* at Col. 15, Lines 60-63 & Col. 20, Lines 16-19. The associated "brake holder" must be "moveable in response to movement of the upper portion between the downhill and touring positions" and must hold the brake "in

ORDER - 4

the raised position when the upper portion is in the touring position." Id. at Col. 15, Lines 63-67 & Col. 20, Lines 19-22.



Id. at Figs. 20B & 22B. The drawing on the left shows the downhill mode, in which, in the absence of a ski boot, the brake platform (61) is elevated, and the brakes (62) are in the deployed position. In the figure on the right, the brake platform (61) is latched and the brakes (62) are locked in the raised position to allow for ascent or touring. After the lever (21) is moved from the downhill to the touring position, the user must depress the brake platform (61) in order to raise and lock the brakes (62).

The claimed scope of the "brake holder" involves the latching mechanism underneath and adjacent to the brake platform, which changes configuration when the lever is switched between the downhill and touring positions. In the downhill mode, the hook (64) will not engage with the brake platform, while in the touring mode, it "is rotated forward such that when the platform is forced downward to raise brake arms 62 from the snow, latch portion 67 of brake link 65 will engage the hook and the brake platform will be retained in a position with brake arm 62 elevated from the snow." Id. at

ORDER - 5

Col. 14, Lines 30-40. In this manner, the brake holder "automatically" switches from a downhill (incapable of locking) to a touring (capable of locking) configuration.

**Discussion**

**A. Patentability**

To be eligible for patent protection, an invention must (i) fall within a category of patentable subject matter, 35 U.S.C. § 101; (ii) be novel, *id.* at § 102; and (iii) be non-obvious, *id.* at § 103. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 96 (2011). A patent is presumed valid, and the burden of establishing the invalidity of a patent or any claim thereof rests on the party asserting such invalidity. 35 U.S.C. § 282(a). The "clear and convincing" standard applies to any evidentiary issues associated with an assertion of invalidity. *See Microsoft*, 564 U.S. at 95; *see also id.* at 114 (Breyer, J., concurring) (clarifying that a factfinder must use the "clear and convincing" standard to decide "disputes about, say, when a product was first sold or whether a prior art reference had been published"). In their motion for summary judgment, defendants assert that Claims 1 and 37 of the '728 Patent are invalid because they were anticipated by the Durfort/Brard Patent or, in other words, they lacked the requisite novelty.

**B. The Durfort/Brard Patent**

The Durfort/Brard Patent discloses a "self-coupling ski fastening device." *See* Ex. 6 to Defs.' Mot. (docket no. 35-6 at 3). The Durfort/Brard Patent contains one independent claim and thirteen dependent claims. *See id.* (docket no. 35-6 at 12-13). The English translation of the independent claim reads as follows:

> A self-coupling ski fastening device, comprising at least one front stop or a rear stop of the type having a slide (20) that can be moved longitudinally in

> relation to the ski (10) in opposition to an adjustable elastic force and that has locking members designed to be applied, with pressure, to the rim (50) of the sole of a ski boot (52), characterized in that these locking members are composed of two tie rods (44, 46) pivotally mounted on the slide about a shaft (42) extending horizontally and transversely to the length of the ski, said tie rods (44, 46) being interlinked by a linking member (48) and capable of pivoting between a bottom locking position and a top release position.

*Id.* at Claim 1 (docket no. 35-6 at 12). A dependent claim describes a brake mechanism as follows:

> The ski fastening device according to one of claims 1 through 6, wherein the rear stop is equipped with ski brakes each formed from a lever (58) borne by a shaft (62) rotatably mounted on the slide (20) and ending in an eccentric element (64) in abutment with a piston (66) tensioned by a spring (68), characterized in that the lever (58) extends beyond the axis of rotation in order to cooperate with a tie rod (44, 46) in such a way that these brakes automatically pivot downward when they are released upon the opening of the fastening device.

*Id.* at Claim 7 (docket no. 35-6 at 12-13). The parties do not appear to dispute that the Durfort/Brard Patent was not disclosed to the examiner during the prosecution of the '728 Patent. According to plaintiff's expert, the ski fastening device described in the Durfort/Brard Patent was never commercialized. Dodge Decl. at ¶ 12 (docket no. 45).

C.  **Anticipation**

Anticipation requires that a single prior art disclosure contain all of the elements of the claimed invention, arranged as in the claim or claims of the patent at issue. *E.g.*, *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1375 (Fed. Cir. 2013). A prior art reference may also anticipate without disclosing a feature of the claimed invention if the characteristic at issue is "necessarily present, or inherent, in the single anticipating reference." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1332, 1343 (Fed. Cir.

ORDER - 7

2005) (quoting *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003)). For prior art to anticipate a claim, it must be both "publicly accessible" and "sufficient to enable one with ordinary skill in the art to practice the invention." *Minn. Mining & Mfg. Co. ("3M") v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed Cir. 2002). Whether a prior art reference is enabling constitutes a legal conclusion based on factual findings. *SmithKline*, 403 F.3d at 1342-43. In contrast, anticipation itself is considered a question of fact. *Id.* at 1343; *see 3M*, 303 F.3d at 1301. When, however, the anticipation inquiry has no underlying genuine disputes of material fact, the issue of novelty or lack thereof is ripe for judgment as a matter of law. *SmithKline*, 403 F.3d at 1343; *see also Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008) (anticipation "may be decided on summary judgment if the record reveals no genuine dispute of material fact").

   Defendants contend that the Durfort/Brard Patent contains all of the elements of Claims 1 and 37 of the '728 Patent. In support of its cross-motion regarding anticipation, plaintiff focuses on a single element of Claim 1, which plaintiff asserts is not contained in the Durfort/Brard Patent, namely a "brake holder for holding the brake in the raised position *when the upper portion is in the touring position*." *See* '728 Patent at Col. 15, Lines 65-67 (emphasis added). Although Claim 37 also contains this language, *see id.* at Col. 20, Lines 21-22, plaintiff did not include Claim 37 within the scope of its cross-motion concerning anticipation. The Court is nevertheless satisfied that the issue has been fully briefed, and therefore, sua sponte considers whether the anticipation defense fails as to Claim 37 for the same reasons it lacks merit with regard to Claim 1.

The parties' experts disagree about whether the Durfort/Brard Patent discloses the "brake holder" limitation of Claims 1 and 37. The experts' divergent views, however, do not concern factual issues, but rather involve how the Durfort/Brard Patent is to be construed, which is a question of law. Indeed, with respect to Claim 1 of the '728 Patent, no party has characterized the battle of the experts as a factual dispute, and as to Claim 37, defendants have taken the position, in moving for summary judgment on their theory of anticipation, that no quarrel exists as to any material fact.

Defendants' expert, Jasper Shealy, has interpreted the Durfort/Brard Patent as disclosing a ski brake that is "deployed while in the downhill mode (in the event of a fall), but is locked when in a touring mode." Shealy Report at ¶ 48, Ex. 8 to Defs.' Mot. (docket no. 35-8). For support, Shealy relies on a small portion (italicized below) of the abstract of the Durfort/Brard Patent:

> A self-coupling ski fastening device, with front and rear stops each comprising a slide 20 that can be moved longitudinally relative to the ski 10 in opposition to an adjustable elastic force and that bears locking members designed to be applied, with pressure, against the rim 50 of a sole of a ski boot 52. These locking means are composed of two ties rods, for example 46, pivotally mounted on the slide about a shaft 42 extending horizontally and transversely to the length of the ski, *said tie rods being interlinked by a linking member 48 and capable of pivoting between a lower locking position and an upper release position.*

Durfort/Brard Patent at (57) (docket no. 35-6 at 2) (emphasis added); *see* Shealy Report at ¶ 48 (quoting only the above-italicized language). When the last clause of the abstract is read in context, Shealy's error becomes clear -- although the phrases "lower locking position" and "upper release position" refer to the ski boot, Shealy has misconstrued them to relate to the ski brake.

The specification of the Durfort/Brard Patent further demonstrates that Shealy has misunderstood the segment of the abstract he has cited. According to the specification:

> In the <u>*lower locking position*</u> as shown in Figure 1, the tie rods 44 and 46 and the linking member 48 lock onto the rear portion of the rim of the sole 50 of a boot 52 (Figure 1). In this position, the linking member 48 comes in abutment against the rim of the sole and also against the slide [20]. The tie rods 44 and 46 and the linking member 48 form a single piece with the general shape of a U and which can be made out of, for example, a molded plastic material such as ABS. The linking member 48 has a general curved shape, with the concave side facing the other [front] stop [or toe binding]. As Figure 1 shows, in the <u>*lower locking position*</u> the linking member 48 comes in abutment against the rim of the sole of the boot with one of its edges, namely the front edge 54, and against the front wall 24 of the slide with its opposite or rear edge 56.

Durfort/Brard Patent at 4 (docket no. 35-6 at 6) (emphasis added).



Durfort/Brard Patent at Fig. 1 (docket no. 35-5 at 18). As is apparent from the above-quoted language and Figure 1, in the parlance of the Durfort/Brard Patent, "lower locking position" means the tie rods and their linking member being locked onto the rear portion of the rim of the sole of the ski boot, and is not associated in any way with the ski brake. Plaintiff's expert, David J. Dodge, has reached the same conclusion. *See* Dodge Decl. at ¶ 15 (docket no. 45) ("The 'lower locking position' actually refers to the tie rods 44 and

46 and linking member 48 'locking' onto the boot heel, not locking with respect to the brake.").

Moreover, unlike Claims 1 and 37 of the '728 Patent, the Durfort/Brard Patent does not explicitly disclose any feature that would hold the brake in the horizontal position, elevated from the snow, when the device is "unlocked" and the heel of the ski boot is released. The specification of the Durfort/Brard Patent explains:

> The slide 20 of the rear stop [or heel binding] is furthermore equipped with ski brakes comprising, in standard fashion, two portions that are symmetrical in relation to the fastener, each of which having a lever 58 ending in a preferably notched tab 60. Each of the levers 58 is borne by an obliquely oriented shaft 62 designed to pivot in the slide 20. This shaft 62 ends in an eccentric element 64 applied under a piston 66 tensioned by a spring 68 (Figure 1). Each of the levers 58 extends beyond the axis of rotation (shaft) 62 in the form of a terminal portion 70 designed to cooperate with the corresponding tie rod. Owing to the oblique arrangement of the shafts 62, the thrust exerted on the tie rods 44 and 46 by the sole of the ski boot causes the levers 58 to pivot upwards from the position shown in Figure 3 to the position shown in Figure 4 and move closer together above the ski (Figure 4). The release of the ski boot by the fastener, by releasing the tension on the spring 68, brings the levers 58 and the tabs 60 into the position shown in Figure 3 in standard fashion.

Durfort/Brard Patent at 4 (docket no. 35-6 at 6).



Fig. 3        Fig. 4

Durfort/Brard Patent (docket no. 35-5 at 19).

ORDER - 11

The Durfort/Brard Patent envisions that, when the ski boot is released from the fastener or binding, the brake will spring or rotate down (into the snow) "in standard fashion." Nowhere in the Durfort/Brard Patent is any mention made of the brake remaining in the raised, horizontal position, as depicted in Figure 4, when the heel of the ski boot is unlocked or detached from the rear stop (or heel fastener or binding) and is therefore not exerting the requisite "thrust" on the tie rods (44 and 46).[2]

Despite the Durfort/Brard Patent's lack of any explicit disclosure of a "brake holder" element, defendants' expert postulates that, when the heel of the ski boot is detached, the ski brake would remain "locked" in the raised, horizontal position by virtue of the friction between the tie rods (44 and 46) and the upper surface of the terminal portion (70) of the brake levers, as well as between the inner sides of the tie rods and the outer sides of the slide (20). _See_ Shealy Report at ¶¶ 52-53 (docket no. 35-8). According to Shealy, the friction between the identified components would overcome the spring (68) that is supposed to force the brake to rotate into the snow in the event that the ski boot detaches during a fall. _Id._ at ¶ 53-54. If Shealy were correct, however, the brake would

---

[2] Plaintiff's expert has criticized the Durfort/Brard Patent for being "unclear," as well as "confusing and misleading," and for containing "numerous errors," including mislabeled diagrams, which render it incapable of being understood by one skilled in the art. Dodge Decl. at ¶¶ 11-12 (docket no. 45). The examples Dodge offers, however, either (i) concern the "front stop" or toe binding, which is not at issue in this lawsuit, _see id._ at ¶¶ 12(c)-(d); _see also_ Durfort/Brard Patent (docket no. 35-6 at 9) (indicating that Figures 6 and 7 show the "front stop"), or (ii) appear to highlight problems in translation from French to English, _see_ Dodge Decl. at ¶¶ 12(a)-(b) (lamenting about the interchangeable use of the distinct terms "truss" and "rail," and the varying description of a certain component as a "longitudinal slit" or "lower surface"). For purposes of deciding the cross-motions concerning the anticipation defense, the Court did not consider plaintiff's expert's disparagement of the Durfort/Brard Patent, but rather treated the patent as valid and appropriately issued, giving full effect to its claims, figures, specification, and express language, as translated.

ORDER - 12

never deploy because the spring would not be strong enough to overcome the alleged friction, which is the opposite of the result purportedly achieved by the Durfort/Brard Patent, namely for the brake to "spring" into the snow when the boot is released.

In addition to being unsupported by the language of the Durfort/Brard Patent and inconsistent with its stated goals, Shealy's friction theory defies common sense.[3] The invention at issue is designed to be used in snowy and freezing conditions. One need not even be skilled in the art to know that coefficients of friction diminish drastically when surfaces become wet or icy. Defendants' argument that, although a "brake holder" element is not explicitly disclosed in the Durfort/Brard Patent, it is necessarily present or inherent therein lacks merit.

The Court is persuaded, as a matter of law, that the prior art does not enable a person with ordinary skill in the art to practice any "brake holder" invention. In light of this ruling, the Court need not further address whether defendants have proven that the Durfort/Brard Patent contains all of the other elements of Claims 1 and 37 of the '728 Patent, arranged as in such claims. Plaintiff is entitled to summary judgment as to the anticipation defense asserted with respect to Claims 1 and 37 of the '728 Patent.

**Conclusion**

For the foregoing reasons, with regard to whether Claims 1 and 37 of the '728 Patent were anticipated by the Durfort/Brard Patent, defendants' motion for

---

[3] Plaintiff's expert has described Shealy's friction-based brake holder as "almost certainly . . . completely unfeasible." *See* Dodge Decl. at ¶ 21 (docket no. 45).

ORDER - 13

summary judgment, docket no. 35, was denied, and plaintiff's cross-motion for partial summary judgment, docket no. 49, as sua sponte expanded by the Court, was granted.

IT IS SO ORDERED.

Dated this 11th day of May, 2017.

Thomas S. Zilly
United States District Judge

ORDER - 14